Blanc et al vs. Murray.

## No. 8879.

### JULES A. BLANC ET AL. VS. P. A. MURRAY.

The fact that the damage complained of is inflicted by a public nuisance, will not prevent a recovery at the suit of an individual, if he has suffered a special and particular damage therefrom, different from that which is common to all.

A public nuisance is one, the effects of which are common to the general public, and which does not produce any special or particular damage to any one person as distinguished from the rest of the public.

If a nuisance is susceptible of being both public and private, and is so to such an extent that an individual right is violated, then the private remedy is permissible, even though the result may be to open the door to a multiplicity of suits. Thus, smoke, noise, noxious vapors, noisome smells, or other cause which creates a public nuisance, may, by interfering with comfortable enjoyment of property, create a private nuisance as well, and cause a special and particular damage which will justify an individual action for damages.

Where the right to the private action exists, injunction will lie to restrain the continuance of the nuisance and suppress it.

The City Council cannot legally authorize what will produce a private nuisance. A municipal body cannot do more than a State Legislature, and although what is authorized by the Legislature within the scope of its constitutional power cannot be a public nuisance, it may be a private nuisance, and the legislative grant is no protection against a private action for damages resulting therefrom. A *fortiori* is this true of authorization from a City Council.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus,* J.

*Miller & Finney* and *Bayne & Denégre* for Plaintiffs and Appellees :

Plaintiffs, owners of valuable property, occupied by them as dwelling houses, complain of a nuisance constructed by defendant near them, which causes them special damage, impairing the use and value of their houses and endangering the lives of their families. An injunction was granted by the court, and on a trial before a jury was maintained ; and it is apparent from the record that the jury found defendant's structure and appurtenances a nuisance *per se.* See record, pp. 889, 116. The plaintiffs are entitled to have the injunction maintained. Civil Code, arts. 857, 865, 866 ; 2 Martin N. S 317 ; 11 Martin 620 ; 7 A. 498 ; 10 A. 432 ; 14 A. 243, 286 ; 2 A. 770, 773 ; Story on Equity Pleadings, sec.

Blanc et al. vs. Murray.

537; 6 Johnson's Chancery Rep. 157; 4 Cowen 682; High on Injunctions. sects. 533, 534. 535, 650, 655; Otto 609; Tilton vs. City R. R. Co.

The plaintiffs gave notice to defendant to desist, before he commenced the construction of his building, and have constantly offered to submit to any reasonable sacrifice to induce him to abate the nuisance. The evidence shows that plaintiffs suffer great special damages and loss, and that they and their families are subjected to special annoyance and perils: and the verdict of the jury and judgment in their favor should be affirmed. Civil Code 857 *et seq.;* Woods on Nuisance, sects. 534, 653.

The fact that the structure and appurtenances are made in violation of the city ordinances is rather an aggravation of plaintiffs' damages and wrongs than an excuse for defendant. The violation of a law does not deprive plaintiffs of their right to restrain defendant or recover damages for special injury and damage to them. Thompson on Negligence, vol. 2, p. 1232, note, citing authorities.

Our courts daily accord redress by granting injunctions, and condemning the wrong-doer to pay damages. Cases cited above.

*Geo. L. Bright* for Defendant and Appellant.

---

The opinion of the Court was delivered by

Manning, J. The plaintiffs, owners of valuable property occupied by them as dwellings, complain that the defendant is constructing contiguous to them, within the fire limits of the city and in violation of its ordinances, an inflammable and dangerous wooden structure, in which he has placed a large quantity of pine and cypress lumber, which endangers their property and the lives of their families, and diminishes the value of the former and impairs its use, thus causing them irreparable injury and creating a nuisance. The damage alleged is several thousand dollars in amount. An injunction was obtained, which the lower court perpetuated.

The defendant excepted that the petition disclosed no cause of action, for if he has violated an ordinance of the city, the remedy is for the city to enforce her ordinance, and that the plaintiffs have none as individuals, or if any, not by injunction. Should his exception be overruled, he avers that he is constructing the building according to law and in compliance with the city ordinances.

The argument of defendant is that the erection of a wooden building is not a nuisance *per se* and is illegal solely because of the prohibition by city ordinance, and that private individuals have no right to sue for its abatement.

Unquestionably the general doctrine is that, for damages arising from a public nuisance—that is, a nuisance the effects of which are common to every person—and which produces no special or particular damage to any one person as distinguished from the rest of the public, there can be no redress except through a civil action or criminal proceedings

taken by an officer on behalf of the public. Wood on Nuisances, sec. 641. But it is equally well settled, that the fact that the damage is inflicted by a public nuisance will not prevent a recovery at the suit of an individual, if he has suffered a special and particular damage therefrom different from that which is common to all. *Ib.* sec. 653. It is only when the injury arising from a nuisance is to a purely public right, that is to say when the nuisance is in its nature a public nuisance, so that the injury is general and public in its effects, and no private right is violated in contradistinction to the rights of the rest of the public, that individuals are precluded from bringing private suits for the violation of their individual rights. If the nuisance is susceptible of being both public and private, and is so to such an extent that an individual right is violated, then the private remedy is permissible, even though the result might be to open the door to a multiplicity of suits. *Ib.* sec. 655.

Thus it is undisputable that noise, smoke, noxious vapors, noisome smells, or other cause which creates a public nuisance, may by interfering with comfortable enjoyment of property create a private nuisance as well, and occasion a special and particular damage which will justify and sustain an individual action for damages. *Ib.* sec. 534. English cases cited in 6 Jacob's Digest, 9516. And where the right to the private remedy exists, there can be no doubt that an injunction will lie. Story Eq. Jur. § 924; Milhaw vs. Sharp, 13 N. Y. 625; Doolittle vs. Supervisors, 18 N. Y. 160.

The exception was therefore properly overruled.

Nor will the defense, that the structure is authorized by the City Council and has been made in compliance with its requirements, avail if the proof establishes the fact of private nuisance. A municipal body cannot legally do more than the Legislature of a State, and although this latter may authorize a use of property that will operate to produce a public nuisance, it cannot authorize a use of it that will create a private nuisance. Wood on Nuisances, sec. 751. Or, to put the doctrine in more exact form, that which is authorized by the Legislature, within the strict scope of its constitutional power, cannot be a public nuisance, but it may be a private nuisance, and the legislative grant is no protection against a private action for damages resulting therefrom. *Ib.* sec. 750. The doctrine sometimes stated in elementary works, and which has been held by some courts, that whatever is authorized by a Legislature cannot be a nuisance of any kind, is exploded.

Blanc et al. vs. Murray.

The highest judicial authority has recently said, in reference to the grant by Congress to a railroad of the right to lay its track within the limits of the National Capitol and to construct other works necessary to the proper completion and maintenance of its road—"whatever the extent of the authority conferred, it was accompanied with this implied qualification that the works should not be so placed as by their use to unreasonably interfere with and disturb the peaceful and comfortable enjoyment of others in their property. Grants of privileges or powers to corporate bodies confer no license to use them in disregard of the private rights of others, and with immunity for their invasion." Balt. & P. R. Co. vs. Fifth Baptist Church; 2 U. S. Sup. Ct. Reporter, 719. And what is true of a grant by Congress to a railway corporation is *a fortiori* true of an authorization by a City Council to a private individual.

If then the proof of nuisance of the defendant's structure to the plaintiffs' dwellings is satisfactory, there can be no doubt of their right to the perpetuation of their injunction.

The structure is at one of the corners of Carondelet and St. Joseph streets. Mr. Blanc resides nearly opposite the defendant's corner. Mr. Herring's residence adjoins it; the third plaintiff has a dwelling house opposite it on another corner. The structure is a shed rather than a house. Brick pillars support the upper floor, and between them are gates or doors. Wooden pillars surmount those, and are covered with thin sheet-iron. The upper story is open. Within is collected a quantity of seasoned pine and cypress. The defendant is a cistern builder, and this shed of two storys is his shop. Shavings are plentiful within, and without are piles of lumber. Some of it is on the roof, and cisterns when completed are put up there temporarily. They are waterless. A steam railway passes in the middle of St. Joseph street several times a day, puffing out sparks of fire. Of course the danger of ignition of the shavings and the seasoned lumber is always imminent. One of the witnesses says, it is a large match-box, but he is one of the plaintiffs. Take another, who is not a party to the suit and is a builder by trade. He says the structure is extremely dangerous to the surrounding property. It is entirely open and very liable to catch on fire, much more so than any building, and that the outside as well as inside is very inflammable. The only fire-proof part is the brick pillars. The rest is very liable to burn and would make a hot fire. Several witnesses confirm this, and the diminution in desirability and therefore in value of the plaintiffs' property is established.

A part of the cross-examination of the plaintiffs sought to ascertain if the true motive of their action was not to get rid of a cooper's shop from other cause than the danger, but it failed. They seemed to have been animated by a liberal spirit to the defendant—certainly anything but an oppressive or querulous temper—since they offered him for his property one thousand dollars more than the highest bid he could get for it.

Judgment affirmed.

### On Application for Rehearing.

The former opinion is explained, showing that it was not held either that a wooden building, even if constructed within the fire-limits of the city, was a private nuisance of which individuals could complain, or that the business of manufacturing cisterns was a nuisance *per se*, but only that the business of cistern-maker, pursued in the manner which the evidence exhibits, in a structure of the kind used, in such a locality and with such surroundings as shown, is a nuisance, by reason of the extraordinary and unnecessary danger of fire arising therefrom. The relief, however, must be strictly confined to the abatement of the nuisance, and the former decree is modified accordingly.

The opinion of the Court was delivered by

FENNER, J. Recognizing the importance of the questions involved, we have attentively considered this application.

As held by the judge *à quo in limine*, and affirmed by ourselves, we remain satisfied that the terms of the petition are broad enough to support the charge that the defendant had established and maintained a private nuisance. The case was tried on that theory and defendant has had all the benefit of full defense. It would require a very clear defect of pleading to justify the maintenance of defendant's objection at this stage of the case, which could serve no useful purpose.

We have not held that the construction of a wooden building, even within the fire-limits of the city, is, *per se*, a private nuisance of which adjacent proprietors may judicially complain.

Nor have we held that the business of cistern-maker is a private nuisance, *per se*.

What we have held is, that the business of cistern-making, pursued in the manner in which the evidence exhibits, in a structure of the kind built by defendant in such a locality and with such surroundings as here shown, is a private nuisance, the abatement of which may be demanded by persons whose private rights are specially affected thereby.

The peculiar facts are too clearly stated in our original opinion to require repetition.

They clearly bring the case within the principle announced by a learned author in the following words: "It is a nuisance for a person

to make an erection in the vicinity of another's building and negligently and carelessly carry on a business there that directly exposes his property to loss or damage by fire." Wood on Nuisance, sec. 149; Varnly vs. Thompson, 13 F. C. (Scotch) 491; Derwoody vs. Des Arc, 18 Ark. 252.

We have reflected on the limitations imposed on this doctrine by other authorities, referred to by Mr. Wood in sections 150, 151, but conclude that they do not apply to the case in hand.

In matters of this kind, each case must rest upon its own peculiar circumstances, and in determining the question of nuisance *vel non* it is necessary to balance the rights of the parties in view of all the circumstances, and say whether or not the use of the property, in the manner complained of, is reasonable and in accordance with the relative rights of the parties.

A cardinal principle of the relief granted in such cases, however, is, that it should be strictly confined to the abatement of the nuisance.

We are not authorized to enjoin the defendant from pursuing at all his business of cistern-maker upon his property in question; because, conducted prudently and in a structure affording reasonable and proper security against incident damages, it is a lawful occupation, not a nuisance *per se*, to the unavoidable inconveniences of which plaintiffs must submit.

Neither should we compel defendant to remove his structure; because that, in itself, is not a source of such danger as to justify private complaint.

The nuisance arises from the combined facts of the pursuit of such a business in such a structure and in the manner complained of. Our original decree merely affirmed the judgment, overlooking its details wherein it covered matters not justified by the principles announced in the opinion, and therefore requires to be modified so as to accord with these views, which do not differ from those expressed in the first opinion.

The amendment, however, may be made without the necessity of granting a rehearing.

Our former decree herein affirming the judgment appealed from, is, therefore, annulled and set aside.

It is now ordered and adjudged that the judgment appealed from be annulled, avoided and reversed; and proceeding to render such judgment as should have been rendered by the lower court, it is now adjudged and decreed that defendant, P. A. Murray, be and he is hereby

perpetually enjoined from occupying and using the lots and buildings owned by him at the corner of St. Joseph and Carondelet streets, in this city, for the purpose of manufacturing cisterns and from accumulating therein lumber, shavings and other inflammable material for said purpose, until the said buildings shall have been so remodeled and constructed as to afford reasonable security against fire; and he is further ordered and commanded to remove forthwith from said premises the shavings and like inflammable material now therein; reserving to plaintiffs whatever rights they may have in the premises.

Defendant to pay costs in the lower court and plaintiffs to pay costs of this appeal.

--------

### DISSENTING OPINION.

POCHÉ, J.  A second examination of this case has satisfied me that in their pleadings plaintiffs have disclosed no cause of action. The exclusive ground of complaint in plaintiffs' petition is that defendant is erecting a wooden structure in violation of law and of certain enumerated ordinances of the city of New Orleans.

Their pleadings, therefore, eliminate from the case all consideration of a private nuisance, or of a nuisance *per se.*

It was doubtless the opinion of plaintiffs' learned counsel that such a building and defendant's trade or occupation were not nuisances and could not be dealt with as such unless either or both were erected or carried on in a manner violative of some prohibitory law or of some city ordinance.

That conclusion is inevitable and finds ample support in reason as well as in law and authority.

A shop, even if built exclusively of wood, erected and used for the purpose of building cisterns, would not be considered a nuisance in the country or in an unincorporated town or village.  Persons following that, as well as all other lawful trades, are entitled to the full protection of the law, and their calling will not be declared a nuisance because it may produce some inconvenience to the neighborhood, unless the complainant can show that he has thereby suffered real and substantial injury.   Wood's Law of Nuisances, sec. 792.

No rule of law or jurisprudence can be invoked as sustaining the proposition that a cooper-shop, or cistern-builder's establishment, is a nuisance *per se.*   But such establishments could be treated as public nuisances if they were built within the fire-limits of the city of New Orleans in violation of the ordinance regulating the kind of structures allowed and the manner of building the same, within such limits.

Plaintiffs' complaint in this case is, that defendant has built a shed or wooden structure in violation of the ordinance which forbids the erection of any building within the defined limits, "except the walls thereof be constructed of brick or other non-combustible materials, covered with slate or other non-combustible materials."

The record shows that the defendant presented to the proper city authorities his application for permission to erect a building which he described, giving the details of the means which he intended to use so as to make his building fire-proof, or at least to comply with the requirements of the ordinance in the premises. The permission was granted to him and he at once proceeded with his construction, when he was stopped by the injunction.

If, as charged, he subsequently violated the provisions of the ordinance, or began to use the building as a shop before its completion, the city authorities had the undoubted, but exclusive, power to interfere with him so as to coerce obedience to the law, or to prohibit the premature use of the building; but that power is not lodged in private individuals, unless they allege and show special and actual damages accruing therefrom to themselves or to their property. "The city alone could and should have taken steps to enforce the conditions of its regulations by the use of its police power." Werges vs. R. R. Co., 35 A. 648.

It is plain to my mind that the violation of city ordinances can give no cause for civil action to individuals who fail to allege that the nuisance complained of is a nuisance *per se*.

I, therefore, dissent from the opinion and decree of the majority in refusing the rehearing applied for in this case, and I think that our previous opinion should have been reconsidered.