The opinion of the court was delivered by
Miller, J.
The defendant appeals from the judgment of the lower court, making perpetual the injunction prohibiting him from conducting the concert saloon at the corner of Customhouse and Royal streets, and decreeing the establishment to be a nuisance.
The petition was filed by property holders, averring substantially that the female employees of the defendant dressed immodestly, enticed the men frequenting the establishment to drink with them, leading to indecent familiarities; that the establishment opened in the evening, remained open at night, devoted to drinking and debauchery of the women and men; that these excesses led to disorderly conduct, frequent arrests at night, occasioning unpleasant scenes at the entrance of the place and on the street, annoying to the residents and interrupting their sleep; that the fascinations of *1318 the establishments attracted vicious and disreputable people; that the theatrical performances there were indecent and could be seen from the street; that the women, with their lewd style of dressing, exhibited themselves so as to be seen from the premises of petitioners, or of some of them, were forced on their attention, and the petition contains other allegations tending to show that the place, the business conducted and the attendants constitutes a nuisance to the neighborhood.
On two of the corners where the establishment is located are new hotels erected at great expense,-adapted for the accommodation of lai’ge numbers of guests and receiving a fair share of public patronage; on another corner is one of the principal family grocex’y stores of the city; a short distance from this concert hall are furniture stores and other business establishments.
We have a record in this case of over six hundred pages. The testimony comes from residents, guests at the hotels, the hotel proprietors, the business people in the neighborhood, police officers and others. Here and there we find the statement that there are other disreputable places of the same character; from some of the police we have the subdued, but none the less significant expression that the place is a concert saloon, and that which takes place there is that pertains to a place of that character. Again we have the defensive testimony that the women employees have visited the hotels, and that goods have been bought in the neighborhood for the establishment. We take occasion to say that this testimony to our minds carries no significance of the slightest tolerance of the establishment on the part of those indicated by the testimony and against whom ic was directed. The hotels appear to be well conducted and highly reputable, and it is supposed that disreputable people may, perhaps, find entrance occasionally in any hotel without affecting the character of the house. As to the supplies said to be purchased for the establishment, there is in the record testimony that one of the business houses in the neighborhood refused to have any account with the establishment. It is in the record, too, that some of the neighbors consented to the location of this establishment. That was before the business was developed. We notice this species of testimony only, because it is in the record, not that we deem it' of pertinence in determining the controversy. If in that neighborhood there are similar places, it is equally true the street is a principal thoroughfare *1319 for the public, on the way to a large hotel, business houses, the courts and churches. The supposed tolerance attributed to some of the neighbors is not supported; if it were, it would be of little moment in the solution of the issue here. The other aspect of the testimony has had our careful attention. We do not propose to recapitulate it. We announce the conclusion it supports the allegations of the petition, both as to that which takes place within the premises, and as to that having more direct relation to the question before us — i. e., the public aspect of this licensed business. The appearance of disreputable women in the public approaches to the place; their character manifested by their conduct and dress; the assembling of bad characters about the building; the noises incident to drunkenness and boisterous enjoyment disturbing the peace and quiet of the neighborhood; the midnight arrests of disorderly women and men breaking the stillness of the period for sleep; the exhibitions of women in scant attire and the indecent familiarities forced on the observation of neighbors, and notwithstanding screens at the doors, still exposed to some extent, at least, to the public attention, all these and ocher externals of this place we consider established.
The defence is substantially chat the Revenue Act No. 150 of 1890, Sec. 10, Class 2, authorizes licenses of concert halls, where cancan, clodoche and similar female dancing are shown, and that defendant holds such licenses.
In our opinion there can be no question the uses by defendant of his licenses causes nuisances of the most serious character. Those uses collect disorderly crowds; lead to boisterous conduct; noises and midnight arrests, disturbing the peace; presents to the public view lewd women, indecently attired, and lascivious conduct, all instances of nuisance given in text-books and adjudicated cases. To mitigate the character of defendant’s business we find in the record testimony from witnesses who undertake to say the value of property in the neighborhood is improved by concert saloons, with all the methods belonging to them, brought to our notice. The erection of hotels and expensive business stores in the view of these witnesses, whose opinions are put before us, are not causes of improvement of property. We reject this testimony that concert saloons of the character in question here are aids in tending to increase values. We reach the other conclusion, indicated by other testimony, that such establishments menace values. The deprecia *1320 tion of the property of others arising from the use one makes of his own, is another element of nuisance. In every point of view, it is our conclusion, defendant’s establishments fall within the classification of nuisances in legal as well as in ordinary significance. See Wood on Nuisances, Sees. 1, 15, 72, 38, 39, 52, 542, 801.
It is urged, if a nuisance it is licensed, hence is beyond interference by the courts. The answer to this contention is that the business carried on is plainly not covered by the licenses. Concert saloons do not imply, least of all express, in the faintest sense, the uses of this establishment; nor do clodoche, cancan or similar female dances, to use the words of the statute, whatever the significance of clodoche and the cancan, include the conduct and manifestations in defendant’s premises and other attendants of the uses of his licenses. The public scandal, against which this suit is directed, does not arise from female dancing permitted by the licenses. The record points to other and different causes of the complaints in the petition. It may be added that when licenses are invoked to protect evils of the character under consideration here the licenses are not to be strained. We think it is entirely safe to conclude they have no tendency to authorize the uses the defendant claims to be within the scope of the statute. Wood on Nuisances, Secs. 38, 39, 753, 742, 756 and 751.
Nor do we think there is any force in the contention that because of the licenses defendant holds, the citizen has no action to abate the nuisance claimed to be protected by the license. There is in this the intervention of the Attorney General joining the petitioners. Without it we think the right of action of the petitioners is complete. Wood on Nuisances, 619, 625, 645, 647, 653, 655; Blanc vs. Murray, 36 An. 162.
The judgment of the lower court enjoins defendant from conducting the business of a concert saloon. But his licenses authorize that business. As long as that legislation is on the statute books, it is obligatory on the courts. The statute supposes the concert saloon business to be reputable. It is the legislative judgment courts can not question. It is by perversion from the business of concert saloons, authorized by the statute, that they become disreputable. In other words, it is the uses of defendant’s premises that creates the nuisances. The prevention of those uses is within the judicial control. We take occasion to say they are equally within the con *1321 trol of the police authorities. We will have to reverse the judgment, but we affirm the entire power of the courts to restrain, with the full vigor, and to the utmost extent of the law, all violations of public decency and of order, attempted under the cover of licenses extending no shadow of such immunity as is claimed for defendant in this case. If the gross improprieties within the defendant’s premises are stopped, and they are within his control, there will be, we think, no gathering of disreputable people or noises, or midnight •arrests, disturbing the peace of the neighborhood, nor indecent exhibitions forced upon the public attention. The court, in determining the question of nuisance, directs its inquiry to the inconveniences, annoyances and scandals that affect the defendant’s neighbors and the public using the street, The remedy administered must, necessarily, be applied to the causes that bring about the evils of which the petition complains, and these causes are in the methods permitted by defendant within his premises'. The judicial prohibition is of those methods; will confine the defendant’s business to that described in his license, and will not tolerate its abuse and perversion to purposes not within its scope. We think the lower court will have no difficulty in enforcing, if the occasion arises, the observance of its injunction, so as to prevent acts within or without the building, tending to violations of peace and decency.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed, that the preliminary injunction be made perpetual, restraining the defendant from conducting in any manner not within the scope of his license and tending to disturb the peace or produce scandals in the neighborhood, or prohibited by the ordinances and laws, and that plaintiff pay costs.