(121 So. 613)

No. 29609.

STATE ex rel. DEMA REALTY CO. v. Mc-
DONALD et al.

Feb. 25, 1929. Rehearing Denied March 25,
1929.

Legier, McEnerny & Waguespack, of New Orleans, for appellants.

Deutsch & Kerrigan, of New Orleans, for appellee.

THOMPSON, J. The relator owns certain real estate located at the corner of Baronne and Bordeaux streets in this city.

The defendants own the property No. 4803 Baronne street, which is likewise situated at the intersection of Baronne and Bordeaux streets, diagonally across from the property of plaintiff.

The defendants are now using, and have for a great many years used, their property as a retail grocery store. The property was so used long before the plaintiff acquired its property.

In March, 1927, the zoning ordinance No. 9651 was adopted which prohibited the establishment or maintenance of all businesses of every kind and character in a certain area therein defined, and providing that all businesses then in operation within said area should be liquidated within one year from the passage of the ordinance.

The area thus defined and established as a residential district included the property owned by the plaintiff and the defendants.

The defendant failed or refused to comply with the terms and conditions of the ordinance, and, the city having failed to take any civil action, the relator applied for a writ of injunction.

A rule nisi was issued, and on a hearing a preliminary injunction was granted.

The defendants were granted a suspensive appeal from that judgment.

It is alleged in the petition that the continuing violation of the ordinance is a constant public nuisance, particularly to relator, who owns the property before mentioned, and that the conduct of the said business by the defendants in violation of said ordinance deprives relator of the protection to which it is entitled thereunder, and is injurious and detrimental to the property rights of relator, in that the said acts depreciate the value of relator's property for residential purposes.

The first and primary defense interposed is by way of an exception of lack of interest and of no cause of action, in support of which it is argued that plaintiff has failed to prove that defendant's store is a nuisance, and has failed to prove that the plaintiff has been seriously damaged by the continued operation of the store.

In reply to the first contention we take it to be well settled that any business operated or maintained in violation or in defiance of a zoning ordinance is to be regarded as a public or common nuisance.

In the City of New Orleans v. Liberty Shop Case, 157 La. 26, 101 So. 798, 40 A. L. R. 1136, the business of dealing in ladies' wearing apparel in an exclusive residence district, in violation of a zoning ordinance, was held to be a public nuisance.

"The zoning ordinance in this case does not, in terms, declare that the proscribed business establishment shall be deemed a nuisance. But the declaration that the establishment is unlawful, and that the proprietor shall, on conviction, be punished by fine or imprisonment, etc., is the same as to say that the establishment shall be deemed a nuisance. Surely it would add nothing to the meaning or purport of such an ordinance, if in terms it declared that a business estab-

lishment in the residence district should be deemed a nuisance."

And in the State ex rel. Civello v. New Orleans Case, 154 La. 283, 97 So. 444, the court said:

"Aside, from considerations of economic administration, in the matter of police and fire protection, street paving, etc., any business establishment is likely to be a genuine nuisance in a neighborhood of residences."

It will not do to say, therefore, that the operation of the store by the defendants after the time fixed by the ordinance for them to liquidate and to cease carrying on the grocery business within the residential district was not a common and public nuisance.

It is conceded by defendants that an action by the local authorities would lie to abate the grocery store as a public nuisance. Section 8, Act 240 of 1926.

In the Liberty Shop Case, referred to supra, we said:

"But, if the wrong complained of is injurious to property interests or civil rights, or if it is a public nuisance, either in the opinion of the court or in virtue of a statute or an ordinance making it a nuisance, the fact that it is also a violation of a criminal statute or ordinance does not take away the authority of a court of civil jurisdiction to prevent the injury or abate the nuisance."

We think we have clearly shown that the business of defendant continued in violation of the zoning ordinance is in fact and in law a public nuisance, and that the public authorities are vested with power to cause such nuisance to be abated.

The question then recurs, Has an individual owning residential property in the zoned district a right of action to abate such nuisance where the authorities have failed or refused to do so?

The rule is well settled and universally recognized that a public nuisance may un-

der certain conditions and circumstances become a private nuisance—public in its general effect upon the public—private as to those who suffer a special or particular damage therefrom apart from the common injury.

Joyce in his work on Nuisances, p. 22, declares that there is no difference in principle between a condition which is called a private, and one which is called a public, nuisance; the constituents of both being the same.

"It is not the number who suffer which constitutes an exclusive test, but the nature of the right affected which determines whether private or public action will lie; for the fact that numbers are injured does not make the nuisance such a common one as to exclude redress by private remedy from a single individual."

"Nor is there in this respect any difference in the nature or character of the thing itself; that which is a public nuisance and which annoys the public generally or invades its rights, constitutes a private nuisance where an individual, or class of individuals, sustains as such, a special injury as distinguished from that sustained by the public, and redress in such case exists by way of private remedy."

The doctrine that a nuisance may be both public and private has been repeatedly recognized in the jurisprudence of this state.

In Blanc v. Murray, 36 La. Ann. 162, 51 Am. Rep. 7, it was said:

"If a nuisance is susceptible of being both public and private, and is so to such an extent that an individual right is violated, then the private remedy is permissible, even though the result might be to open the door to a multiplicity of suits."

In the case of Koehl v. Schoenhausen, 47 La. Ann. 1316, 17 So. 809, the court said:

"Such nuisances disturbing individuals in the enjoyment of their property injurious to their rights and interfering with their peace

and comfort may be abated at the suit of the parties affected although the nuisances prohibited by law and the ordinance are within the police power to suppress."

Again, in Barrow v. Gaillardanne, 122 La. 559, 47 So. 891, it was said:

"The fact that a particular act constitutes a public nuisance does not deprive an individual who suffers a special injury therefrom from having recourse to a private remedy to have it abated."

The above case quoted with approval from Crescent City Live Stock & Slaughter House Co. v. Larrieux, 30 La. Ann. 799, as follows:

"The doctrine of our law is, and, so far as we know, without an exception, that a party whose rights are invaded may invoke the aid of the courts to prevent any act which, if done, would entitle him to damages."

It was at one time said (State ex rel. Blaise v. City of New Orleans, 142 La. 73, 76 So. 244) that business establishments could only be prohibited in residence districts from purely æsthetic considerations, since the city charter did not authorize the city to prohibit business establishments in residence districts.

However, the Constitution of 1921, § 29, art. 14, conferred on the municipalities authority to zone their territory, to create residential districts, and to prohibit the establishment of places of business in residential districts. So that, under present conditions, such zoning ordinances are maintained, not on æsthetic considerations, but upon considerations of public health, safety, comfort, or general welfare.

The evidence in this case shows that the plaintiff's property will not be worth as much if the grocery store is permitted to continue as it would be if the district was an exclusive residential district as intended by the ordinance.

The difference in value is placed at $2,000.

In the Civello Case, cited supra, we pointed out the many advantages of an exclusive

residential district and many considerations that could have prompted the establishment of such districts.

Among them we stated that property brings a better price in a residence neighborhood where business establishments are excluded that in a residence neighborhood where an objectionable business is apt to be established at any time.

It cannot be properly said that the considerations mentioned affect only the public in general. They affect peculiarly and vitally the personal and property rights of the individual.

 Our conclusion, therefore, is that the plaintiff has the right to bring this suit and to stand in judgment and that the petition discloses a cause of action.

Nor is this right in any manner affected by the provision of Act 240 of 1926, which confers upon the proper local authorities the right to institute any appropriate action or proceedings to prevent the unlawful erection or use of a building for a business purpose in a zoned district.

That provision did not confer upon municipalities any additional or greater power than they already possessed.

The city of New Orleans was already authorized to sue under its charter, and the authority to enact zoning ordinances necessarily carried with it the power to enforce such ordinances by either civil or criminal process.

The Legislature was not competent to take away from an individual the constitutional right of action for an injury suffered in his person or property by reason of the violation of a zoning ordinance and confer such right of action exclusively upon the municipal authorities. Nor did the Legislature intend or attempt to do so in the statute referred to.

In their original brief, counsel for defendants concede that the ordinance in question is constitutional and valid in all respects except as to that provision which requires that businesses in the affected area must liquidate within one year and remove from the area.

This provision, it is contended, is unconstitutional as being arbitrary and unreasonable, and amounts to a taking of the defendant's property without due process of law.

██ That zoning ordinances are within the police power of municipal corporations and are not violative of any constitutional guaranty, state or federal, is now too well settled to require discussion or citation of authorities.

██ And equally well settled is the rule that zoning ordinances will not be declared unreasonable and arbitrary, unless they are found to be plainly and palpably so.

██ In the instant case there is nothing on the face of the ordinance and nothing in the record on which the court would be authorized or justified in declaring the attacked provision of the ordinance harsh, arbitrary, or unreasonable.

There is nothing to show the extent or volume of business done by the defendants. For all that appears, the business may be a small retail grocery business located in an outlying section far removed from the business center of the city. The defendants have not shown, and the court is unable to conjecture, any substantial reason why such a business could not be liquidated and closed out within a year.

The plaintiff and defendant have each cited numerous authorities dealing with various phases and legal aspects of zoning ordinances which we shall not attempt to review or to discuss.

The decisions of the state courts are many and conflicting, but the matter of creating and maintaining residential districts from which business and trade of every sort were excluded appears to have been before the

Supreme Court of the United States for the first time in the case of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016, decided November 22, 1926.

In that case, after referring to the fact that the decisions of the state courts were numerous and conflicting, the court observed that those which broadly sustain the power to create and maintain residential districts to the exclusion of business and trade of every sort greatly outnumber those which deny it altogether or narrowly limit it. A list of cases sustaining the broader view as well as those of a contrary view will be found in 272 U. S. page 390 of the opinion (47 S. Ct. 119).

The village of Euclid was a suburb of the city of Cleveland, Ohio. Its area was 12 to 14 square miles, the greater part of which was farm or unimproved lands.

The Ambler Realty Company owned some 67 acres in the western part of the village— on the east and on the west of this tract was laid out residential districts.

It was specifically averred that the ordinance attempts to restrict and control the lawful uses of appellee's land so as to confiscate and destroy a great part of its value; that the ordinance constitutes a cloud upon the land, reduces and destroys its value, and has the effect of diverting the normal industrial, commercial, and residential development thereof to other less favorable locations.

The court in the course of its opinion said:

"The serious question in the case arises over the provisions of the ordinance excluding from residential districts, apartment houses, business houses, retail stores and shops, and other like establishments. This question involves the validity of what is really the crux of the more recent zoning legislation, namely, the creation and maintenance of residential districts, from which business

and trade of every sort * * * are excluded."

After quoting practically in full the reasons given by this court in the Civello Case, the opinion proceeds:

"If these reasons, thus summarized, do not demonstrate the wisdom or sound policy in all respects of those restrictions, which we have indicated as pertinent to the inquiry, at least, the reasons are sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."

The court refused, therefore, to declare the provisions of the zoning ordinance arbitrary and unreasonable.

It is true the precise question here presented was not involved in that case, but we have stated the facts and made the quotation above because the case is cited and relied on by both plaintiff and defendant.

It is to be observed, too, that the ordinance there under consideration provided for the establishment and maintenance of residential districts from which every kind of business was excluded. The ordinance did not deal specially with any already established business in the zoned district. But, if the village had the authority to create and to maintain a purely residential district, which the court held it did have, and if such an ordinance was not arbitrary and unreasonable, it follows necessarily that the village was vested with the authority to remove any business or trade from the district and to fix a limit of time in which the same shall be done.

There is nothing in Act 27 of 1918 and Act 240 of 1926 which limits the authority to order the removal of business establishments from residential districts or that requires that any time limit be fixed.

The matter is left to the sound judgment and discretion of the municipal authorities, and this discretion will not be interfered with by the courts, unless its exercise is found to be manifestly and palpably hostile and unreasonable.

We do not find such to be the case in the ordinance under consideration.

The judgment appealed from is affirmed.

ROGERS, J., dissents, being of the opinion that the exception of no right of action should be maintained.

BRUNOT, J., dissents.

O'NIELL, C. J., dissents on the ground that a citizen or taxpayer, or the state on relation of the citizen or taxpayer, has no right of action to enforce the ordinance.